[No. S092426. Jan. 17, 2002.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT DERWIN AVERY, Defendant and Appellant.

**COUNSEL**

Randy Baker, under appointment by the Supreme Court, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner and Robert R. Anderson, Chief Assistant Attorneys General, Ronald A. Bass, Assistant Attorney General, René A. Chacón and Nanette Winaker, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**CHIN, J.**—Under California law, theft requires an intent to *permanently* deprive another of property. (See *People v. Ortega* (1998) 19 Cal.4th 686, 693 [80 Cal.Rptr.2d 489, 968 P.2d 48].) We granted review to determine whether this requirement is satisfied by the intent to take the property only temporarily, but for so extended a period of time as to deprive the owner of a major portion of its value or enjoyment. We conclude such an intent is sufficient.

### I. PROCEDURAL HISTORY

A court convicted defendant of arson and found true that he had suffered a prior serious felony conviction, specifically, a 1983 Texas conviction for burglary. Regarding the burglary conviction, the record shows that defendant had been charged by indictment in Texas with entering the habitation of another with the "intent to commit theft," and he pleaded no contest to "burglary of a habitation with intent to commit theft." The record provides no other information about the nature of the Texas burglary.

On appeal, defendant argued that, for a number of reasons, the evidence was insufficient to show that the Texas conviction was a serious felony under California law. The Court of Appeal agreed with one of defendant's arguments, finding that the intent requirement for theft under Texas law did not satisfy the similar requirement under California law. In light of this conclusion, the court stated it "need not address [defendant's] other contentions challenging the finding."

We granted the People's petition for review and limited the issue to be briefed and argued to "whether the intent to take property temporarily, but for so extended a period of time as to deprive the owner of a major portion of its value or enjoyment, satisfies the intent requirement of theft under California law."[1]

---

[1]Despite our order limiting the issue, the parties have briefed other issues. We do not consider them. (Cal. Rules of Court, rule 29.2(b).) On remand, the Court of Appeal should decide any remaining issues.

## II. Discussion

### A. *The Issue*

■ "Various sentencing statutes in California provide for longer prison sentences if the defendant has suffered one or more prior convictions of specified types." (*People v. Woodell* (1998) 17 Cal.4th 448, 452 [71 Cal.Rptr.2d 241, 950 P.2d 85].) A prominent example is a conviction of a "serious felony" as defined in Penal Code section 1192.7, subdivision (c).[2] Conviction of a serious felony has substantial sentencing implications under the "Three Strikes" law (*People v. Woodell, supra*, 17 Cal.4th at p. 452) and also under section 667, subdivision (a)(1), which mandates a five-year sentence enhancement for each such conviction. To qualify as a serious felony, a conviction from another jurisdiction must involve conduct that would qualify as a serious felony in California. To make this determination, the court may consider the entire record of the prior conviction as well as the elements of the crime. (*People v. Woodell, supra*, 17 Cal.4th at p. 453.)

In this case, the record of conviction merely showed that defendant pleaded no contest to "burglary of a habitation with intent to commit theft . . . ." On this record, therefore, we know nothing about the nature of the Texas crime beyond its statutory requirements and the fact that the underlying intent was to commit theft. If this conviction qualifies as serious, it is under section 1192.7, subdivision (c)(18), which, at the time relevant here, provided that "[b]urglary of an inhabited dwelling house" is a serious felony.[3] So the question is whether a Texas conviction of "burglary of a habitation with intent to commit theft" under Texas law necessarily involves conduct that would qualify as "[b]urglary of an inhabited dwelling house" under California law.

In California, burglary requires "the intent to commit grand or petit larceny or any felony." (§ 459.)[4] The record of conviction shows that the Texas conviction involved the intent to commit "theft," which would appear to satisfy the California intent requirement. Defendant's argument, however,

---

[2]Unless otherwise indicated, all further statutory references are to this code.

[3]Proposition 21, approved in 2000, amended section 1192.7, subdivision (c)(18), to refer to "any burglary of the first degree." This does not appear to be a substantive change. As relevant here, "[e]very burglary of an inhabited dwelling house" is first degree burglary. (§ 460, subd. (a).)

[4]In 1927, California consolidated various formerly distinct property offenses, including larceny, into the single crime of "theft." (See *People v. Davis* (1998) 19 Cal.4th 301, 304 [79 Cal.Rptr.2d 295, 965 P.2d 1165] (*Davis*).) Since that time, any statutory reference to "larceny" is read as if it were the word "theft." (§ 490a.) Accordingly, we will sometimes use the word "theft" rather than "larceny."

and what the Court of Appeal concluded, is that theft in Texas is not necessarily theft in California. The statutory elements of theft in Texas are different, or at least appear different, from the elements in California. If it is possible to intend theft under Texas law but not under California law, then the Texas conviction would not necessarily be a serious felony in California.

California courts have long held that theft by larceny requires the intent to *permanently* deprive the owner of possession of the property. (*People v. Brown* (1894) 105 Cal. 66 [38 P. 518].) The Texas theft statute, however, requires only the "intent to deprive the owner of property." (Tex. Penal Code Ann. § 31.03, subd. (a).) "Deprive" is defined as "withhold[ing] property from the owner permanently or for so extended a period of time that a major portion of the value or enjoyment of the property is lost to the owner . . . ." (Tex. Penal Code Ann. § 31.01, subd. (2)(A).) Relying heavily on *People v. Marquez* (1993) 16 Cal.App.4th 115 [20 Cal.Rptr.2d 365] (*Marquez*), the Court of Appeal held that this broader statutory language means that a person can intend to commit theft in Texas without intending to commit theft in California. Because, on this record, it could not determine exactly what defendant's intent was regarding the prior burglary, it concluded "that the evidence fails to support a finding that [defendant] had the intent to commit theft as defined under California law."

 Thus, the issue is squarely presented: Does the intent to deprive the owner of property only temporarily, but for so extended a period of time as to deprive the owner of a major portion of its value or enjoyment, satisfy the California requirement of intent to deprive the owner of the property permanently?

B. *Resolution of the Issue*

*Marquez, supra,* 16 Cal.App.4th 115, confronted this issue in a case involving an Oregon statute with language similar to that of Texas. The court concluded the statute did not satisfy the California intent requirement. "The intent to acquire, or deprive an owner of, 'the major portion of the economic value or benefit' of his or her property is not equivalent to the intent to permanently deprive an owner of his or her property. A person who intends only to *temporarily* deprive an owner of property, albeit while acquiring or depriving the owner of the main *value* of the property, does not intend to *permanently* deprive the owner of the property and therefore does not have the intent to commit theft, as that crime is defined under California law." (*Id.* at p. 123.) Recently, another Court of Appeal disagreed with *Marquez* and concluded that the Oregon statute broke "no new ground" but was consistent with the California intent requirement. (*People v. Zangari*

(2001) 89 Cal.App.4th 1436, 1447 [108 Cal.Rptr.2d 250], review granted Oct. 10, 2001, S099489, opn. ordered pub. Jan. 17, 2002.)

In *Davis, supra,* 19 Cal.4th 301, we held that the intent to take property from a store in order to return it for a refund satisfied California's intent requirement even though that intent was not literally to permanently deprive the store of the precise property taken. We explained that the rule that theft requires the intent to deprive the owner of the property permanently "is not inflexible: 'The word "permanently," as used here is not to be taken literally.' " (*Id.* at p. 307, quoting Perkins & Boyce, Criminal Law (3d ed. 1982) p. 327 (hereafter Perkins).) We discussed briefly, but did not decide, whether *Marquez, supra,* 16 Cal.App.4th 115, was correct. "We have found no California case in which the defendant had the intent hypothesized by the court in *Marquez, supra,* 16 Cal.App.4th at page 123. . . . If and when such a case arises in California it will be time enough to determine whether that rule is in fact part of the common law of larceny of which Penal Code section 484 is declaratory." (*Davis, supra,* 19 Cal.4th at p. 318, fn. 15.)

The time has now come to decide the question, although, due to the way in which it arises, we do so in the abstract without a concrete factual context. We now conclude that an intent to take the property for so extended a period as to deprive the owner of a major portion of its value or enjoyment satisfies the common law, and therefore California, intent requirement. ■ We start by noting that California's statute does not itself expressly require an intent to permanently deprive. Rather, it merely says that, to be guilty of theft, the person must "feloniously steal" the property; it does not further define the intent requirement. (§ 484, subd. (a).) But the "statute is declaratory of the common law" and so includes the common law intent requirement. (*Davis, supra,* 19 Cal.4th at p. 304, fn. 1.) The reference to the intent to permanently deprive is merely a shorthand way of describing the common law requirement and is not intended literally. Thus, to determine the exact nature of California's intent requirement, we must turn to the common law.

In *Davis,* we discussed various factual circumstances involving arguably temporary takings that courts and commentators have found constitute theft. ■ We discerned "three relevant categories of cases holding that the requisite intent to steal may be found even though the defendant's primary purpose in taking the property is not to deprive the owner permanently of possession: i.e., (1) when the defendant intends to 'sell' the property back to its owner, (2) when the defendant intends to claim a reward for 'finding' the property, and (3) when . . . the defendant intends to return the property to its owner for a 'refund.' " (*Davis, supra,* 19 Cal.4th at p. 307.)

Of particular importance here, we also noted that "[o]ther categories of cases of temporary taking amounting to larceny have also been recognized. Thus the commentators agree there is an intent to steal when the *nature* of the property is such that even a temporary taking will deprive the owner of its primary economic value, e.g., when the property is dated material or perishable in nature or good for only seasonal use. (E.g., Perkins, *supra*, p. 327 [taking cut flowers from a florist without consent, with intent to return them in a week]; Model Pen. Code & Commentaries, com. 6 to § 223.2, p. 175 [taking a neighbor's lawn mower without consent for the summer, with intent to return it in the fall].) Another such category is composed of cases in which the defendant takes property with intent to use it temporarily and then to *abandon* it in circumstances making it unlikely the owner will recover it. (E.g., *State v. Davis* (1875) 38 N.J.L. 176, 178 [horse and carriage abandoned on a public road 'after many miles and hours of reckless driving'] . . . .)" (*Davis, supra,* 19 Cal.4th at pp. 307-308, fn. 4.)

Another commentator states the rule as being "that, for larceny, one must intend to deprive the owner of the possession of his property either permanently or for an unreasonable length of time, or intend to use it in such a way that the owner will probably be thus deprived of his property." (2 LaFave & Scott, Substantive Criminal Law (1986) Crimes Relating to Property, § 8.5, p. 357 (hereafter LaFave and Scott).) "An intent to return the property taken, in order to qualify as a defense to larceny, must be an intent to return within a reasonable time. [Fn. omitted.] In determining what is a reasonable time, much depends upon the nature of the property and its expected useful life, for to deprive the owner of the property for so long a time that he has lost a 'major portion of the economic value' [fn. omitted] is to deprive him for an unreasonable time. It is one thing to take another's fresh strawberries with intent to return them two weeks later, another thing to take his diamond ring with a like intention." (*Id.* at § 8.5(b), p. 361.) The first footnote in this quotation states, "See State v. South, 28 N.J.L. 28 (1859), quoting from the ed. note to Regina v. Holloway, 169 Eng.Rep. 285 (1848) (an intent to take temporarily 'intending however to keep them for a very unreasonable time . . . would seem in common sense to be ample evidence of an intent wholly to deprive the owner of his property,' i.e. the intent to steal which larceny requires)." (*Id.* at § 8.5(b), p. 361, fn. 22; see also Perkins, *supra*, p. 328.)

The case generally cited (see, e.g., *People v. Kunkin* (1973) 9 Cal.3d 245, 251 [107 Cal.Rptr. 184, 507 P.2d 1392, 57 A.L.R.3d 1199]) as establishing California's intent-to-deprive-permanently requirement itself implies that the requirement is not to be taken literally. In *People v. Brown, supra,* 105 Cal. 66, the defendant defended against a charge of stealing a bicycle by testifying that he intended to return it. We held that the testimony, if believed,

would make him not guilty of larceny. "While the felonious intent of the party taking need not necessarily be an intention to convert the property to his own use, still it must in all cases be an intent to wholly and permanently deprive the owner thereof." (*Id.* at p. 69.) Despite the seemingly absolute language used here, the authority we cited "as directly and fully sustaining this principle" (*ibid.*) shows we did not mean it absolutely. One of the cases we cited was *State v. Davis, supra,* 38 N.J.L. 176, which, as we explained in *Davis, supra,* 19 Cal.4th at page 307 and footnote 4, helped establish that the intent to steal is satisfied when "the defendant takes property with intent to use it temporarily and then to *abandon* it in circumstances making it unlikely the owner will recover it." We also cited *State v. South* (1859) 28 N.J.L. 28, which, as noted in 2 LaFave and Scott, *supra,* section 8.5(b), page 361, footnote 22, quoted above, applied "common sense" and concluded that an intent to take temporarily but for an unreasonable length of time was "ample evidence" of an intent to deprive permanently.

For these reasons, we agree with the Court of Appeal in *People v. Zangari, supra,* 89 Cal.App.4th at page 1443, review granted October 10, 2001, S099489, opinion ordered published January 17, 2002, that "the intent to deprive an owner of the main value of his property is equivalent to the intent to permanently deprive an owner of property."

Defendant argues that the rule of "lenity" (*People ex rel. Lungren v. Superior Court* (1996) 14 Cal.4th 294, 312 [58 Cal.Rptr.2d 855, 926 P.2d 1042]), whereby courts must resolve doubts as to the meaning of a statute in a criminal defendant's favor, compels a different result. Two separate strands of interpretive guidelines coexist in this regard. On the one hand, we have repeatedly stated that when a statute defining a crime or punishment is susceptible of two reasonable interpretations, the appellate court should ordinarily adopt that interpretation more favorable to the defendant. (E.g., *People v. Garcia* (1999) 21 Cal.4th 1, 10 [87 Cal.Rptr.2d 114, 980 P.2d 829]; *People v. Gardeley* (1996) 14 Cal.4th 605, 622 [59 Cal.Rptr.2d 356, 927 P.2d 713].) This rule has constitutional underpinnings. " 'Application of the rule of lenity ensures that criminal statutes will provide fair warning concerning conduct rendered illegal and strikes the appropriate balance between the legislature, the prosecutor, and the court in defining criminal liability. [Citation.] ("[B]ecause of the seriousness of criminal penalties, and because criminal punishment usually represents the moral condemnation of the community, legislatures and not courts should define criminal activity").' " (*People ex rel. Lungren v. Superior Court, supra,* 14 Cal.4th at p. 313, quoting *Liparota v. United States* (1985) 471 U.S. 419, 427 [105 S.Ct. 2084, 2089, 85 L.Ed.2d 434].) On the other hand, section

4 provides: "The rule of the common law, that penal statutes are to be strictly construed, has no application to this Code. All of its provisions are to be construed according to the fair import of their terms, with a view to effect its objects and to promote justice." Appellate courts have often invoked section 4 as a reason *not* to interpret a statute strictly in favor of a criminal defendant. (*People v. Rabe* (1927) 202 Cal. 409, 415 [261 P. 303]; *People v. Squier* (1993) 15 Cal.App.4th 235, 241 [18 Cal.Rptr.2d 536]; *People v. Fields* (1980) 105 Cal.App.3d 341, 343 [164 Cal.Rptr. 336] ["In California, there is no rule of strict construction of penal statutes"].)

Although some tension exists between these two lines of authority, we believe they can be reconciled. (See, e.g., *Bowland v. Municipal Court* (1976) 18 Cal.3d 479, 487-488 [134 Cal.Rptr. 630, 556 P.2d 1081]; *Ex Parte Rosenheim* (1890) 83 Cal. 388, 391 [23 P. 372] [citing both].) As Witkin explains, "The rule [of lenity] applies only if the court can do no more than guess what the legislative body intended; there must be an egregious ambiguity and uncertainty to justify invoking the rule." (1 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Introduction to Crimes, § 24, p. 53.) In *People v. Jones* (1988) 46 Cal.3d 585, 599 [250 Cal.Rptr. 635, 758 P.2d 1165], we described the rule of lenity in a way fully consistent with section 4: "The rule of statutory interpretation that ambiguous penal statutes are construed in favor of defendants is inapplicable unless two reasonable interpretations of the same provision stand in relative equipoise, i.e., that resolution of the statute's ambiguities in a convincing manner is impracticable."

Thus, although true ambiguities are resolved in a defendant's favor, an appellate court should not strain to interpret a penal statute in defendant's favor if it can fairly discern a contrary legislative intent. ▆▆ In this case, for the reasons stated, the language in section 484, subdivision (a), referring to an intent to "feloniously steal," reasonably construed, adopted the common law intent requirement. That requirement, although often summarized as the intent to deprive another of the property permanently, is satisfied by the intent to deprive temporarily but for an unreasonable time so as to deprive the person of a major portion of its value or enjoyment. The rule of lenity does not compel a different result.

### III. CONCLUSION

We reverse the judgment of the Court of Appeal and remand the matter for further proceedings consistent with this opinion, including deciding any

remaining issues. We also disapprove *People v. Marquez, supra,* 16 Cal.App.4th 115, to the extent it is inconsistent with this opinion.

George, C. J., Kennard, J., Baxter, J., Werdegar, J., Brown, J., and Moreno, J., concurred.

Appellant's petition for a rehearing was denied February 20, 2002.