Filed 5/28/26  P. v. Gonzalez CA4/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for
publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication
or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, | D085356 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. JCF007468, JCF007468) |
| MATTHEW GONZALEZ, | |
| Defendant and Appellant. | |


APPEAL from a judgment of the Superior Court of Imperial County,
Poli Flores, Jr., Judge.  Affirmed.

Heather E. Shallenberger, under appointment by the Court of Appeal,
for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant
Attorney General, Arlene A. Sevidal, Assistant Attorney General, Stephanie
H. Chow and James Spradley, Deputy Attorneys General, for Plaintiff and
Respondent.

# I. INTRODUCTION

A jury convicted Matthew Gonzalez of two counts of vandalism, four counts of violating court orders, burglary, and grand theft. On appeal, Gonzalez challenges only the grand theft count. He claims there was insufficient evidence of theft's intent element because based on his history with the victim, he intended to return the stolen property. We find sufficient evidence of the requisite intent and affirm the conviction.

# II. BACKGROUND

In 2024, the Imperial County District Attorney's Office charged Gonzalez with stalking (Pen. Code,[1] § 646.9, subd. (a); count 1), two counts of vandalism (§ 594, subd. (a); counts 2 & 9), four counts of violating court orders (§§ 166, subd. (a)(4), 273.6, subd. (a); counts 3, 4, 7 & 8), first degree residential burglary (§ 459; count 5), and grand theft (§ 487, subd. (a); count 6).[2]

At Gonzalez's trial, the jury heard testimony from his wife, Brittany Morales. Morales described the couple's relationship as toxic, with numerous separations and reconciliations continuing even after restraining orders were issued against Gonzalez.

Morales also told the jury about several prior incidents where Gonzalez took her property. On one occasion, Gonzalez took Morales's phone, car keys, and purse, locked her in their bedroom, and prevented her from leaving. In another, Gonzalez did not want Morales to go on a trip, so he took her identification card and passport, locked her in their bedroom, and blocked her car with his. Morales described a third incident where the couple argued

---

[1]    All undesignated section references are to the Penal Code.

[2]    Because Gonzalez only challenges his grand theft conviction, we focus on that offense and omit matters related to the other counts.

before Morales was leaving for a concert and Gonzalez forcibly took Morales's purse. Finally, Gonzalez took Morales's pink Gucci purse during yet another physical altercation. When asked if she always got her purses back from Gonzalez, Morales testified that she did not recover the pink Gucci purse.

As for the charged grand theft, Morales stated that after staying with her parents, she returned home on Sunday, January 7, 2024, to find her patio doorframe broken and her bedroom a mess. She discovered that numerous items were missing including clothing, shoes, four purses, perfumes, a vibrator, candles, a pink taser, and the couple's wedding rings. Pictures of Morales and Gonzalez were also displayed around the house.

The following day, Morales received a message from Reilly Hunter, one of Gonzalez's friends, stating that he wanted to return Morales's belongings. Morales called the police and ultimately obtained all of her property at the police station. Morales gave estimated values for some of the items taken, which exceeded $10,000 in total.

Hunter testified as well, stating that he was with Gonzalez the weekend of January 5, 2024. Hunter went to what he believed was Gonzalez's house to drink beer. Gonzalez said that he was moving out, so Hunter agreed to let Gonzelez keep several containers of what appeared to be clothing at Gonzalez's house. Once he heard that some of the property belonged to Morales, Hunter contacted Morales and cooperated with the police.

The jury found Gonzalez not guilty of stalking, but guilty of the remaining counts. The trial court sentenced Gonzalez to four years in prison for the burglary, plus a consecutive eight months for felony vandalism in count 2 regarding a separate incident. The trial court imposed and stayed sentences on all remaining counts. Gonzalez's timely appeal followed.

## III. DISCUSSION

### A.    Standard of Review

When a defendant challenges the sufficiency of the evidence supporting a conviction, " ' "we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." ' " (*People v. Holmes, McClain and Newborn* (2022) 12 Cal.5th 719, 780.)  " 'A reversal for insufficient evidence "is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support' " the jury's verdict.' " (*People v. Penunuri* (2018) 5 Cal.5th 126, 142.)

### B.    Grand Theft

Grand theft is the felonious taking of another person's property valued at more than $950.  (§§ 484, 487.)  The required intent to commit a theft is either to permanently deprive the owner of the property or "to take the property for so extended a period as to deprive the owner of a major portion of its value or enjoyment." (*People v. Avery* (2002) 27 Cal.4th 49, 55.)

### C.    Analysis

Gonzalez broke into Morales's home, took her personal items, and stored them at a friend's house.  Morales did not regain possession of these items until they were recovered by the police.  These circumstances support the jury's verdict because "an intent to permanently deprive someone of his or her property may be inferred when one unlawfully takes the property of another." (*People v. Morales* (1993) 19 Cal.App.4th 1383, 1391.)

As for the previous times where Gonzalez took Morales's belongings, Morales described an incident where Gonzalez took her purse and she never

4

got it back.  As such, Gonzalez did not always return the items he took. Additionally, those prior incidents involved a small number of items, occurred when the couple was arguing in person, and Gonzelez's primary intention appeared to be to prevent Morales from leaving.  In contrast, the current offense involved Gonzalez breaking into Morales's unoccupied residence and taking numerous items.  Thus, notwithstanding the couple's history, the jury could reasonably infer that when Gonzelez burglarized Morales, he intended to either to deprive Morales permanently of her property or to deprive her of a major portion of its value or enjoyment.

Finally, although one could infer an intent to return based on Gonzalez's prior behavior, that does not mean the substantial evidence standard was not met.  "If our review of the record shows that there is substantial evidence to support the judgment, we must affirm, even if there is also substantial evidence to support a contrary conclusion and the jury might have reached a different result if it had believed other evidence."  (*People v. Riley* (2015) 240 Cal.App.4th 1152, 1165–1166.)

In sum, we find grand theft's intent element sufficiently supported.  We therefore affirm the judgment.

## IV. DISPOSITION

The judgment is affirmed.

RUBIN, J.

WE CONCUR:

O'ROURKE, Acting P. J.

BUCHANAN, J.